**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AIRPORT INDUSTRIAL PARK, INC.<br>d/b/a P.E.C. CONTRACTING ENGINEERS<br><br>Plaintiff,<br><br>v.<br><br><br>THE UNITED STATES<br><br>Defendant. | ) | No. 02-1077C<br>(Judge Hewitt) |

**<u>DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT</u>**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States hereby asserts that the following material facts are uncontroverted:

1. On March 25, 1999, the United States, acting through the Department of the Army, Pittsburgh District, Corps of Engineers (the "Corps"), awarded Airport Industrial Park, Inc. d/b/a P.E.C. Contracting Engineers ("P.E.C.") Contract No. DACW59-99-C-0002, "New Dock Front, Pittsburgh Engineer Warehouse and Repair Shops, Neville Island, Pennsylvania" (the "contract"). DeStefano Decl. ¶ 2.

2. The solicitation (Standard Form 1442) for the contract indicated that "THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS" within ten calendar days of the award of the contract. DeStefano Decl. Ex. A..

3. In addition, the contract incorporated FAR 52.228-1, 48 C.F.R. § 52.228-1 (1996) "Bid Guaranty," which requires successful bidders to furnish adequate bonds within ten days or face termination for default;[1] FAR 52.228-2, 48 C.F.R. § 52.228-2 (1997) "Additional Bond

[1] For the convenience of the Court, excerpts of the relevant provisions of the FAR incorporated into the contract are set forth in the appendix to our motion for summary judgment.

Security," which requires contractors to furnish additional security in the event that a surety becomes unacceptable to the Government; and FAR 52.228-15, 48 C.F.R. § 52.228-15 (1996), "Performance and Payment Bonds – Construction," which requires contractors to furnish performance and payment bonds in amounts dependent upon the contract price (in this case, a performance bond securing 100% of the contract price and a payment bond securing 40% of the contact price). DeStefano Decl. Ex. A.

4. On March 25, 1999, upon the award of the contract, P.E.C. obtained a performance bond and a payment bond from Amwest Surety Insurance Company ("Amwest") in the amounts of $4,646,931.00 and $1,858,772.40, respectively. These bonds were reviewed and approved by the Corps's counsel on April 14, 1999. DeStefano Decl. ¶ 4 & Exs. B, C.

5. Amwest obtained reinsurance from Swiss Reinsurance America Corporation with respect to $2,646,831.00 of the performance bond. As stated in the reinsurance agreement (GSA Standard Form 273, "Reinsurance Agreement For A Miller Act Performance Bond"), the purpose of the reinsurance agreement was to "guarantee and indemnify the United States against loss under the performance bond to the extent of the 'Amount of Reinsurance,'" i.e., $2,646,831.00. The reinsurance agreement was reviewed and approved by the Corps's counsel on April 14, 1999. DeStefano Decl. ¶ 5 & Ex. D.

6. Amwest never provided the Corps with a GSA Form 274, "Reinsurance Agreement for a Miller Act Payment Bond," and the Corps never reviewed or approved such an agreement. DeStefano Decl. ¶ 5.

7. In June 2001, before the completion of the construction called for by the contract, Amwest was declared insolvent and the payment and performance bonds were cancelled.

Accordingly, by letter dated July 6, 2001, Michael S. DeStefano, the contracting officer with respect to the subject contract, directed P.E.C. to secure acceptable replacement bonding within ten days. DeStefano Decl. ¶¶ 6-7 & Exs. E, F.

8. P.E.C. never secured a new payment bond to replace the Amwest bond. Rather, by letter dated July 20, 2001, counsel for P.E.C. advised the Corps of its belief that the reinsurance agreement applied to the payment bond. P.E.C. did not assert in this letter or in any other communication to the Corps prior to the commencement of this lawsuit that it was having difficulty obtaining a replacement payment bond, or that any conduct by the Corps had somehow prevented P.E.C. from obtaining such bonding. DeStefano Decl. ¶¶ 8, 9, 11 & Ex. G.

9. By letter dated July 31, 2001, the Corps, acting through Contracting Officer Michael S. DeStefano, notified P.E.C. that the contract would be terminated for default unless P.E.C. cured certain conditions, including its failure to secure a replacement payment bond. DeStefano Decl. ¶¶ 10 & Ex. H.

10. P.E.C. did not cure its failure to obtain a replacement payment bond (or the other conditions of default) and did not respond to the Mr. DeStefano's July 31, 2001 letter. DeStefano Decl. ¶ 11.

11. By letter dated August 17, 2001, the Corps sent notice to P.E.C. that the contract had been terminated for default. DeStefano Decl. ¶ 11 & Ex. I.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/

BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

/s/

WILLIAM A. LUBICK
Assistant District Counsel
U.S. Army Corps of Engineers,
Pittsburgh District
1813 Federal Building
1000 Liberty Avenue
Pittsburgh, PA 15222-1486
Tel. (412) 395-7495

ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-0290
Fax (202) 514-8624

Attorneys for Defendant

September 11, 2003