**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AIRPORT INDUSTRIAL PARK, INC.<br>d/b/a P.E.C. CONTRACTING ENGINEERS<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-1077C<br>(Judge Hewitt) |

**DECLARATION OF MICHAEL S. DESTEFANO**

I, Michael S. DeStefano, make the following declaration in accordance with 28 U.S.C. § 1746:

1. I am currently a Contracting Officer for the Department of the Army, Pittsburgh District, Corps of Engineers (the "Corps"). I submit this declaration in support of defendant's motion for summary judgment.

2. I am the Contracting Officer with respect to contract no. DACW59-99-C-0002, "New Dock Front, Pittsburgh Engineer Warehouse and Repair Shops, Neville Island, Pennsylvania" (the "contract"), which the Corps awarded to Airport Industrial Park, Inc. d/b/a P.E.C. Contracting Engineers ("P.E.C.") on March 25, 1999.

3. Annexed hereto as Exhibit A is a true and correct copy of the contract, including the solicitation, offer and award and the relevant FAR provisions incorporated therein.

4. Annexed hereto as Exhibit B and C, respectively, are true and correct copies of the performance bond and payment bonds dated March 25, 1999, that PEC obtained from

Amwest Surety Insurance Company ("Amwest"). These bonds were reviewed and approved by the Corps's counsel on April 14, 1999.

5. Annexed hereto as Exhibit D is a true and correct copy of a reinsurance agreement (GSA Standard Form 273) between Amwest and Swiss Reinsurance America Corporation ("Swiss Re") with respect to $2,646,831.00 of the performance bond. The reinsurance agreement was reviewed and approved by the Corps's counsel on April 14, 1999. Amwest never provided the Corps with a GSA Standard Form 274, "Reinsurance Agreement for a Miller Act Payment Bond," and the Corps never reviewed or approved such an agreement.

6. In June 2001, before the completion of the work called for by the contract, Amwest was declared insolvent and the payment and performance bonds were cancelled. Annexed hereto as Exhibit E is a true and correct copy of a letter from Amwest confirming this insolvency and cancellation.

7. By letter dated July 6, 2001, a true and correct copy of which is annexed hereto as Exhibit F, I directed P.E.C. to secure acceptable replacement bonding within ten days.

8. By letter dated July 20, 2001, a true and correct copy of which is annexed hereto as Exhibit G, counsel for P.E.C. informed the Corps of its belief that the reinsurance agreement covered both the payment bond and the performance bond, and that it was therefore not necessary to obtain any replacement bonding as a result of Amwest's insolvency.

9. P.E.C. did not assert in this letter or in any other communication to the Corps prior to the commencement of this lawsuit that it was having difficulty obtaining a replacement payment bond, or that any conduct by the Corps had somehow prevented P.E.C. from obtaining

replacement bonding.

10. By letter dated July 31, 2001, a copy of which is annexed hereto as Exhibit H, the Corps notified P.E.C. that the contract would be terminated for default unless P.E.C. cured certain conditions, including its failure to secure a replacement payment bond.

11. P.E.C. never cured this condition (or the other conditions of default), and did not respond to the July 31, 2001 notice. Accordingly, by letter dated August 17, 2001, a true and correct copy of which is annexed hereto as Exhibit I, I notified P.E.C. that the contract had been terminated for default.

I declare under penalty of perjury that the foregoing is true and correct Executed on September 8, 2003.

MICHAEL S. DESTEFANO

# EXHIBIT A

# SOLICITATION, OFFER AND AWARD
*(Construction, Alteration, or Repair)*

| 1. SOLICITATION NO. | 2. TYPE OF SOLICITATION | 3. DATE ISSUED | PAGE OF PAGES |
|---|---|---|---|
| DACW59-99-B-0001 | [X] SEALED BID *(IFB)* <br> [ ] NEGOTIATED *(RFP)* | 12/01/98 | |

IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|
| DACW59-99-C-0002 | W81ET4-8302-0079 | |

7. ISSUED BY CODE CT-P-001

US ARMY ENGR DISTRICT PGH
727 W S MOORHEAD FED BLDG
1000 LIBERTY AVENUE
PITTSBURGH PA 15222-4186

8. ADDRESS OFFER TO

US ARMY ENGR DISTRICT PGH
727 W S MOORHEAD FED BLDG
1000 LIBERTY AVENUE
PITTSBURGH PA 15222-4186

| 9. FOR INFORMATION CALL: | A. NAME | B. TELEPHONE NO. *(Include area code) (NO COLLECT CALLS)* |
|---|---|---|
| | DARLENE A. YOUNG | 412-395-7478 |

## SOLICITATION

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder."

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date):*

**REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY**
[signature] 3/25/99
**OFFICE OF COUNSEL** **DATE**

NEW DOCK FRONT
PITTSBURGH ENGINEER WAREHOUSE
AND REPAIR SHOPS
NEVILLE ISLAND, PENNSYLVANIA

RSS

THIS PROCUREMENT IS 100% SET-ASIDE FOR SMALL BUSINESSES

PLEASE SEE CLAUSE 52.204-4004, SECTION 00700, REGARDING REQUIREMENT THAT ALL CONTRACTORS MUST BE REGISTERED IN THE CENTRAL CONTRACTOR REGISTRATION (CCR) DATABASE TO BE ELIGIBLE FOR ANY CONTRACT AWARD.

11. The Contractor shall begin performance within 10 calendar days and complete it within 365 calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [X] mandatory, [ ] negotiable. *(See ______ .)*

12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)*
[X] YES [ ] NO

12B. CALENDAR DAYS: 10

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 0 copies to perform the work required are due at the place specified in Item 8 by 1100 AM *(hour)* local time 01/05/99 *(date)*. If this is a sealed bid solicitation, offers must be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing other than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.



ORIGINAL

**OFFER** *(Must be fully completed by offeror)*

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*

Airport Industrial Park, Inc. d/b/a
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, PA 15224
DUNS NO. 119116887

CODE 1JJL7 FACILITY CODE

15. TELEPHONE NO. *(Include area code)*

412/621-1944

16. REMITTANCE ADDRESS *(Include only if different than Item 14)*

P.O. Box 7872,
Pittsburgh, PA 15215

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within ______________ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS ▶ SEE ATTACHED UNIT PRICE SCHEDULE

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS

*(The offeror acknowledges receipt of amendments to the solicitation - give number and date of each)*

| AMENDMENT NO. | 1 | 2 | 3 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 12/22/98 | 1/15/99 | 1/26/99 | | | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*

Paul E. Chambers, President

20B. SIGNATURE

Paul E. Chambers, Pres.

20C. OFFER DATE

2/17/99

**AWARD** *(To be completed by Government)*

21. ITEMS ACCEPTED:

Items 0001 thru 0018 Inclsuvie

US Army Corps of Engineers, Pittsburgh
Resident Engineer
Pittsburgh Construction Area Office
3510 Grand Avenue
Pittsburgh, PA 15225

22. AMOUNT

$4,646,931.00

23. ACCOUNTING AND APPROPRIATION DATA

96NAX4902.0000 H41999 08 2439 1099.009.005963642520001TSK

24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ ITEM 21

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO

☐ 10 U.S.C. 2304(c) ( ) ☐ 41 U.S.C. 253(c) ( )

26. ADMINISTERED BY CODE

US ARMY ENGINEER DISTRICT, PITTSBURGH
CORPS OF ENGINEERS, WM. S. MOORHEAD
FEDERAL BUILDING, 1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

27. PAYMENT WILL BE MADE BY

USAED PITTSBURGH DISTRICT
C/O USACE FINANCE CENTER
MAIL STOP 351
7800 THIRD AVENUE
MILLINGTON, TN 38054-5005

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

☐ 28. NEGOTIATED AGREEMENT *Contractor is required to sign this document and return ____________ copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference in or attached to this contract.

☒ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*

31A. NAME OF CONTRACTING OFFICER *(Type or print)*

MICHELE R. HUTFLES

30B. SIGNATURE

30C. DATE

31B. UNITED STATES OF AMERICA

BY Michele R. Hutfles

31C. AWARD DATE

25 MAR 99

SUPPLIES OR SERVICES AND PRICES/COSTS

| ITEM | DESCRIPTION | * QUANTITY | U/M | U/P | AMOUNT |
|---|---|---|---|---|---|
| 0001 | REIMBURSEMENT FOR ACTUAL PERFORMANCE AND PAYMENT BONDS PREMIUM (SEE SECTION 00800) | | NOT TO EXCEED | | $ 58,000.00 |
| 0002 | PROGRESS PHOTOGRAPHS (Sets of 6) | 6 | SE | $ 850.00 | $ 5,100.00 |
| 0003 | REMOVALS | 1 | JB | SUM | $ 50,000.00 |
| 0004 | DEFORMED STEEL BARS FOR CONCRETE REINFORCEMENT | 155,500 | LB | $ .60 | $ 93,300.00 |
| 0005 | METAL SHEET PILING | 31,600 | LF | $ 39.00 | $ 1,232,400.00 |
| 0006 | MISCELLANEOUS METAL | 107,000 | LB | $ 1.68 | $ 179,760.00 |
| 0007 | STORM PIPE EXTENSIONS | 1 | JB | SUM | $ 10,000.00 |
| 0008 | STEEL H-PILES | | | | |
| 0008A | EXTENDED FENDERS, W14X398 | 1,280 | LF | $ 185.00 | $ 236,800.00 |
| 0008B | CLOSURES, HP14X89 | 120 | LF | $ 166.00 | $ 19,920.00 |
| 0008C | LADDER RECESS, HP8X36 | 2,090 | LF | $ 79.00 | $ 165,110.00 |
| 0009 | ACCESS LADDERS | 250 | LF | $ 120.00 | $ 30,000.00 |
| 0010 | SELECT FILL MATERIAL | 2,745 | CD | $ 33.00 | $ 90,585.00 |
| 0011 | CONTROLLED LOW STRENGTH MATERIAL | 3,600 | CD | $ 76.00 | $ 273,600.00 |
| 0012 | CONCRETE FOR MINOR STRUCTURES | 765 | CD | $ 287.00 | $ 219,555.00 |
| 0013 | PERMANENT ANCHOR SYSTEM | | | | |
| 0013A | TYPE 1, ROCK ANCHORS | 91 | EA | $ 12,261.00 | $ 1,115,751.00 |
| 0013B | TYPE 2, SOIL ANCHORS | 36 | EA | $ 9,200.00 | $ 331,200.00 |
| 0013C | GROUTING AND REDRILLING ANCHOR HOLES | 45 | EA | $ 1,360.00 | $ 61,200.00 |
| 0014 | PRECAST CONCRETE WALL PANELS | 3,270 | SF | $ 25.00 | $ 81,750.00 |
| 0015 | PIER TIMBERWORK | 4,710 | LF | $ 70.00 | $ 329,700.00 |
| 0016 | HANDRAILING | 1,000 | LF | $ 40.00 | $ 40,000.00 |
| 0017 | MOORING RINGS | 52 | EA | $ 250.00 | $ 13,000.00 |
| 0018 | KEVELS | 17 | EA | $ 600.00 | $ 10,200.00 |

TOTAL, ITEMS 0001 THRU 0018, INCLUSIVE $ 4,646,931.00

* ALL QUANTITIES ARE ESTIMATED, EXCEPT WHERE THE UNIT IS GIVEN AS "JB"

NOTE: ALL EXTENSIONS OF THE UNIT PRICES SHOWN WILL BE SUBJECT TO VERIFICATION BY THE GOVERNMENT.



Underlined text revised by Amendment No. DACW59-99-B-0001-0002

shall be submitted for each alternate offer, and a separate price comparison table, prepared in accordance with paragraphs (c) and (d) of FAR clause 52.225-5, shall be submitted for each offer that is based on the use of any foreign construction material for which the Government has not yet determined an exception to apply.

(3) If the Government determines that a particular exception requested under paragraph (c) of FAR clause 52.225-5 does not apply, the Government will evaluate only those offers based on use of the equivalent domestic construction material, and the offeror shall be required to furnish such domestic construction material.

(i) In sealed bid procurements, any offer based on use of that particular foreign construction material shall be rejected as nonresponsive.

(ii) In negotiated procurements, any offer based on use of that particular foreign construction material may not be accepted unless revised during negotiations.

(End of provision)

20 52.228-1 BID GUARANTEE (SEP 1996)

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

(c) The amount of the bid guarantee shall be twenty (20%) percent of the bid price or $3,000,000 , whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

(End of provision)

21 52.233-2 SERVICE OF PROTEST (AUG 1996)

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from

54 52.227-7033 RIGHTS IN SHOP DRAWINGS (APR 1966)

(a) Shop drawings for construction means drawings, submitted to the Government by the Construction Contractor, subcontractor or any lower-tier subcontractor pursuant to a construction contract, showing in detail (i) the proposed fabrication and assembly of structural elements and (ii) the installation (i.e., form, fit, and attachment details) of materials or equipment. The Government may duplicate, use, and disclose in any manner and for any purpose shop drawings delivered under this contract.

(b) This clause, including this paragraph (b), shall be included in all subcontracts hereunder at any tier.

(End of clause)

55 52.228-2 ADDITIONAL BOND SECURITY (OCT 1997)

The Contractor shall promptly furnish additional security required to protect the Government and persons supplying labor or materials under this contract if--

(a) Any surety upon any bond, or issuing financial institution for other security, furnished with this contract becomes unacceptable to the Government;

(b) Any surety fails to furnish reports on its financial condition as required by the Government;

(c) The contract price is increased so that the penal sum of any bond becomes inadequate in the opinion of the Contracting Officer; or

(d) An irrevocable letter of credit (ILC) used as security will expire before the end of the period of required security. If the Contractor does not furnish an acceptable extension or replacement ILC, or other acceptable substitute, at least 30 days before an ILC's scheduled expiration, the Contracting officer has the right to immediately draw on the ILC.

(End of clause)

56 52.228-5 INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

(a) The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract.

(b) Before commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective (1) for such period as the laws of the State in which this contract is to be performed prescribe, or (2) until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer.

(c) The Contractor shall insert the substance of this clause, including this paragraph (c), in subcontracts under this contract that require work on a Government installation and shall require subcontractors to provide and maintain the insurance required in the Schedule or elsewhere in the contract. The Contractor shall maintain a copy of all subcontractors' proofs of required insurance, and shall make copies available to the Contracting Officer upon request.

(End of clause)

its election not to extend the expiration date of the Letter of Credit.

5. This confirmation is subject to the Uniform Customs and Practice (UCP) for Documentary Credits, 1993 Revision, International Chamber of Commerce Publication No. 500, and to the extent not inconsistent therewith, to the laws of __________ (state of confirming financial institution).

6. If this confirmation expires during an interruption of business of this financial institution as described in Article 17 of the UCP, we specifically agree to effect payment if this credit is drawn against within 30 days after the resumption of our business.

Sincerely,
(Confirming financial institution)

(g) The following format shall be used by the Contracting Officer for a sight draft to draw on the Letter of Credit:

SIGHT DRAFT

______________________________________________
(City, State)

____________________, 19______

______________________________________________
(Name and address of financial institution)

Pay to the order of______________________________________
(Beneficiary Agency)

the sum of United States $ ______________________________

This draft is drawn under________________________________

Irrevocable Letter of Credit No.__________________________

By: ____________________________________________
(Beneficiary Agency)

(End of clause)

59 52.228-15 Performance and Payment Bonds--Construction (SEP 1996)

(a) Definitions. As used in this clause--

Contract price means the award price of the contract or, for requirements contracts, the price payable for the estimated quantity; or for indefinite-delivery type contracts, the price payable for the specified minimum quantity.

(b) Unless the resulting contract price is $100,000 or less, the successful offeror shall be required to furnish performance and payment bonds to the Contracting Officer as follows:

(1) Performance Bonds (Standard Form 25):

(i) The penal amount of performance bonds shall be 100 percent of the original contract price.

(ii) The Government may require additional performance bond protection when the contract price is increased. The increase in protection shall generally equal 100 percent of the increase in contract price.

(iii) The Government may secure additional protection by directing the Contractor to increase the penal amount of the existing bond or to obtain an additional bond.

(2) Payment Bonds (Standard Form 25-A):

(i) The penal amount of payment bonds shall equal--

(A) 50 percent of the contract price if the contract price is not more than $1 million;

(B) 40 percent of the contract price if the contract price is more than $1 million but not more than $5 million; or

(C) $2.5 million if the contract price is more than $5

million.

(ii) If the original contract price is $5 million or less, the Government may require additional protection if the contract price is increased. The penal amount of the total protection shall meet the requirement of subparagraph (b)(2)(i) of this clause.

(iii) The Government may secure additional protection by directing the Contractor to increase the penal sum of the existing bond or to obtain an additional bond.

(c) The Contractor shall furnish all executed bonds, including any necessary reinsurance agreements, to the Contracting Officer, within the time period specified in the Bid Guarantee provision of the solicitation, or otherwise specified by the Contracting Officer, but in any event, before starting work.

(d) The bonds shall be in the form of firm commitment, supported by corporate sureties whose names appear on the list contained in Treasury Department Circular 570, individual sureties, or by other acceptable security such as postal money order, certified check, cashier's check, irrevocable letter of credit, or, in accordance with Treasury Department regulations, certain bonds or notes of the United States. Treasury Circular 570 is published in the Federal Register, or may be obtained from the U.S. Department of Treasury, Financial Management Service, Surety Bond Branch, 401 14th Street, NW., 2nd Floor, West Wing, Washington, DC 20227.

(End of clause)

60 52.229-3 FEDERAL, STATE, AND LOCAL TAXES (JAN 1991)

(a) "Contract date," as used in this clause, means the date set for bid opening or, if this is a negotiated contract or a modification, the effective date of this contract or modification.

"All applicable Federal, State, and local taxes and duties," as used in this clause, means all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract.

"After-imposed Federal tax," as used in this clause, means any new or increased Federal excise tax or duty, or tax that was exempted or excluded on the contract date but whose exemption was later revoked or reduced during the contract period, on the transactions or property covered by this contract that the Contractor is required to pay or bear as the result of legislative, judicial, or administrative action taking effect after the contract date. It does not include social security tax or other employment taxes.

"After-relieved Federal tax," as used in this clause, means any amount of Federal excise tax or duty, except social security or other employment taxes, that would otherwise have been payable on the transactions or property covered by this contract, but which the Contractor is not required to pay or bear, or for which the Contractor obtains a refund or drawback, as the result of legislative, judicial, or administrative action taking effect after the contract date.

(b) The contract price includes all applicable Federal, State, and local taxes and duties.

(c) The contract price shall be increased by the amount of any after-imposed Federal tax, provided the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price, as a contingency reserve or otherwise.

(d) The contract price shall be decreased by the amount of any after-relieved Federal tax.

# EXHIBIT B

DACW59-99-C-0002

| PERFORMANCE BOND<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>March 25 1999 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL (Legal name and business address)

Airport Industrial Park, Inc. d/b/a
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, PA 15224

TYPE OF ORGANIZATION *("X" one)*

☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☑ CORPORATION

STATE OF INCORPORATION
Pennsylvania

SURETY(IES) *(Name and business address)*

AMWEST SURETY INSURANCE COMPANY
4 NorthShore Center, Ste 500
106 Isabella Street
Pittsburgh, PA 15212

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 4 | 646 | 931 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 03/25/1999 | DACW59-99-C-0002 |

OBLIGATION
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY
William A. Lubeck 4/19/99
OFFICE OF COUNSEL DATE

CONDITIONS:
The Principal has entered into the contract identified above.

THEREFORE:
The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C 270a- 270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:
The Principal and Surety((ies) executed this performance bond and affixed their seals on the above date.

PRINCIPAL

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. Paul E. Chambers Pres. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Paul E. Chambers President | 2. | 3. | |

INDIVIDUAL SURET(IES)

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

CORPORATE SURETY(IES)

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | AMWEST SURETY INSURANCE COMPANY<br>4 NorthShore Cnt #500, Pittsburgh, PA 15212 (Seal) | STATE OF INC.<br>NEBRASKA | LIABILITY LIMIT<br>$ 2,510,000.00 | AMWEST SURETY INSURANCE COMPANY INCORPORATED DEC. 14, 1995 NEBRASKA |
| SIGNATURE(S) | 1. James K. Flavion | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. Attorney-in-Fact James K. Flavion | 2. | | |

# EXHIBIT C

BOND NO.: 1382830 ...MIUM: ...AGE ONE OF TWO PAGES

| PAYMENT BOND | DATE BOND EXECUTED (Must ... same or later than date of contract) March 25 1999 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information .Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions lot reducing this burden, to the FAR Secretariat (VRS). Office OF Federal Acquisition Washington, DC. 20405; and to the Office of Management and the Budget, Paperwork Reduction Project (9000-0045). Washington, D C 20503

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Airport Industrial Park, Inc. d/b/a<br>P.E.C. Contracting Engineers<br>4420 Lorigan Street<br>Pittsburgh, PA 15224 | ☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE ☑ CORPORATION<br>STATE OF INCORPORATION<br>Pennsylvania |

SURETY(IES) (Name and business address)

AMWEST SURETY INSURANCE COMPANY

4 NorthShore Center, Ste 500
106 Isabella Street
Pittsburgh,PA 15212

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 1 | 858 | 772 | 40 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 03/25/1999 | DACW59-99-C-0002 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly" and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY
[signature] 4/19/99
OFFICE OF COUNSEL DATE

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | | | |
|---|---|---|---|
| Signature(s) | 1. [signature] (Seal) | 2. (Seal) | 3. (Seal) |
| Name(s) & Title(s) (Typed) | 1. Paul E. Chambers President | 2. | 3. |

**INDIVIDUAL SURETIES**

| | | |
|---|---|---|
| Signature(s) | 1. (Seal) | 2. (Seal) |
| Name(s) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| | Name & Address | AMWEST SURETY INSURANCE COMPANY<br>5 NorthShore Cñt #500, Pittsburgh, PA 15212 | STATE OF INC.<br>NEBRASKA | LIABILITY LIMIT<br>$ 2,510,000.00 |
| | Signature(s) | 1. [signature] | 2. | |
| | Name(s) & Titles (Typed) | 1. Attorney-in-Fact James K. Flavion | 2. | |

AMWEST SURETY INSURANCE COMPANY INCORPORATED DEC.14, 1995 NEBRASKA

NSN 7540-01-152-8061



STANDARD FORM 25-A (REV 1-90)
Prescribed by GSA

# EXHIBIT D

# REINSURANCE AGREEMENT FOR A MILLER ACT PERFORMANCE BOND

(See instructions on reverse)

| | |
|---|---|
| 1. DIRECT WRITING COMPANY * Amwest Surety Insurance Company 5230 Las Virgenes Road Calabasas, CA 91302 | 1A. DATE DIRECT WRITING COMPANY EXECUTES THIS AGREEMENT March 25, 1999 1B. STATE OF INCORPORATION Nebraska |
| 2. REINSURING COMPANY * Swiss Reinsurance America Corporation 237 Park Avenue New York, NY 10017 | 2A. AMOUNT OF THIS REINSURANCE $ 2,646,931.00 2B. DATE REINSURING COMPANY EXECUTES THIS AGREEMENT March 25, 1999 2C. STATE OF INCORPORATION New York |

| 3. DESCRIPTION OF CONTRACT | | 4. DESCRIPTION OF BOND | |
|---|---|---|---|
| 3A. AMOUNT OF CONTRACT $4,646,931.00 | | 4A. PENAL SUM OF BOND $4,646,931.00 | |
| 3B. CONTRACT DATE March 25, 1999 | 3C. CONTRACT NO. DACW59-99-C-0002 | 4B. DATE OF BOND March 25, 1999 | 4C. BOND NO. 1382830 |
| 3D. DESCRIPTION OF CONTRACT New Dock Front, Pittsburgh Engineer Warehouse and Repair Shops, Neville Island, PA | | 4D. PRINCIPAL * Airport Industrial Park, Inc. d/b/a P.E.C. Contracting Engineers 4420 Lorigan Street Pittsburgh, PA 15224 | |
| 3E. CONTRACTING AGENCY Dept of Army, Corps of Engineers | | 4E. STATE OF INCORPORATION (If Corporate Principal) Pennsylvania | |

REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY
William [signature] 4/19/99
OFFICE OF COUNSEL DATE

AGREEMENT.

(a) The Direct Writing Company named above is bound as a surety to the United States of America on the performance bond described above, wherein the above described is the principal, for the protection of the United States on the contract described above. The contract is for the construction, alteration, or repair of a public building or public work of the United States and the performance bond was furnished to the United States under the Act of August 24, 1935, as amended (40 U.S.C. 270a-270e), known as the Miller Act. The Direct Writing Company has applied to the Reinsuring Company named above to be reinsured and countersecured in the amount shown opposite the name of the Reinsuring Company (referred to as the "Amount of this Reinsurance"), or for whatever amount less than the "Amount of this Reinsurance" the Direct Writing Company is liable to pay under or by virtue of the performance bond.

(b) For a sum mutually agreed upon, paid the the Direct Writing Company to the Reinsuring Company which acknowledges its receipt, the parties to this Agreement covenant and agree to the terms and conditions of this agreement.

TERMS AND CONDITIONS.

(a) The purpose and intent of this agreement is to guarantee and indemnify the United States against loss under the performance bond to the extent of the "Amount of this Reinsurance," or any sum less than the "Amount of this Reinsurance" that is owing and unpaid by the Direct Writing Company to the United States under the performance bond.

(b) If the Direct Writing Company fails to pay any default under the performance bond equal to or in excess of the "Amount of this Reinsurance," the Reinsuring Company covenants and agrees to pay to the United States, the obligee on the performance bond, the "Amount of this Reinsurance." If the Direct Writing Company fails to pay to the United States any default for a sum less than the "Amount of this Reinsurance" the Reinsuring Company covenants and agrees to pay to the United States the full amount of the default, or so much thereof that is not paid to the United States by the Direct Writing Company.

(c) If there is a default on the performance bond for the "Amount of this Reinsurance," or more, the Reinsuring Company and the Direct Writing Company hereby covenant and agree that the United States may bring suit against the Reinsuring Company for the "Amount of this Reinsurance" or, in the case the amount of the default is for less than the "Amount of this Reinsurance," for the full amount of the default.

WITNESS.

The Direct Writing Company and the Reinsuring Company, respectively, have caused this Agreement to be signed and impressed with their respective corporate seals by offices possessing power to sign this instrument, and to be duly attested by officers empowered thereto, on the day and date above written opposite their respective names.

* Items 1, 2, 4D—Furnish legal name, business address and ZIP Code.

| 5. DIRECT WRITING COMPANY | | |
|---|---|---|
| (A) (1) SIGNATURE | (2) ATTEST: SIGNATURE | Corporate Seal |
| (B) (1) NAME AND TITLE (Typed) James K. Flavion, Attorney-in-Fact | (2) NAME AND TITLE (Typed) James M. Griffith, Witness | |

| 6. REINSURING COMPANY | | |
|---|---|---|
| (A) (1) SIGNATURE | (2) ATTEST: SIGNATURE | Corporate Seal |
| (B) (1) NAME AND TITLE (Typed) James K. Flavion, Attorney-in-Fact | (2) NAME AND TITLE (Typed) Karen M. Comport, Witness | |

## INSTRUCTIONS

This form is to be used in cases where it is desired to cover the excess of a Direct Writing Company's underwriting limitation by reinsurance instead of co-insurance on Miller Act performance bonds running to the United States. See FAR (48 CFR) 28.202-1 and 53.228(h).

Execute and file this form as follows:

Original and copies (as specified by the bond-approving officer), signed and sealed, shall accompany the bond or be filed within the time period shown in the bid or proposal.

One carbon copy, signed and sealed, shall accompany the Direct Writing Company's quarterly Schedule of Excess Risks filed with the Department of the Treasury.

Other copies may be prepared for the use of the Direct Writing Company and the Reinsuring Company. Each Reinsuring Company should use a separate form.

# EXHIBIT E

Amwest

**Amwest Surety Insurance Company**
Office of the Liquidator
5230 Las Virgenes Road
Calabasas, CA 91302

TEL 818-871-3725

August 31, 2001

Department of The Army Pittsburgh District, Corps of Engineers
William S. Moorhead Federal Bldg
1000 Liberty Avenue
Pittsburgh, PA 15222

RE: Principal: P.E.C. Contracting Engineers
Bond No.: 1382830
Obligee: Department of The Army Pittsburgh District, Corps of Engineers
Project: New Dock Front, Pittsburgh Engineer Warehouse & Repair Shop

Dear Obligee:

As you have already been advised, Amwest Surety Insurance Company ("Amwest") became the subject of an Order of Liquidation, Declaration of Insolvency and Injunction entered by the District Court of Lancaster County, Nebraska on June 7, 2001. The Court appointed L. Tim Wagner, Director of Insurance of the State of Nebraska, as Liquidator of Amwest. The Liquidator thereafter sent you notice of cancellation of the above-referenced bond.

In the event you have declared the Principal in default, or subsequently declare the principal in default, be advised of the following:

1. You must comply with the termination provisions of the contract and bond.
2. The Liquidator may choose to have the default investigated to determine its validity, and to insure that you take all appropriate steps to mitigate your damages.
3. It is in your best interest to mitigate your damages, because at this time there is no assurance that you will receive the full dollar amount of your claim, even if it is determined to be valid.
4. You will be required to submit an approved Proof of Claim form on or before the claims bar date of June 7, 2002. It is anticipated that this form will be mailed to you on or before October 1, 2001.
5. You will be requested to provide the Liquidator with an accounting of your contract with the Principal as of July 7, 2001.
6. To the extent that you elect to submit a Proof of Claim for damages which the Liquidator views as attributable to your failure to mitigate your damages, we will have no choice but to dispute any claim you submit.

Thank you in advance for your immediate attention to these matters.

Very truly yours,

Michael J. FitzGibbons
Special Deputy Liquidator

MJF/ls

# EXHIBIT F

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

REPLY TO
ATTENTION OF

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

July 6, 2001

CELRP-CT-O

Mr. Paul E. Chambers
Airport Industrial Park, Inc. d/b/a
P.E.C. Contracting Engineers
P O Box 7872
Pittsburgh, PA 15215

Subject: Contract No. DACW59-99-C-0002, New Dock Front, Neville Island, Pennsylvania

Dear Mr. Chambers:

In regards with the above-mentioned contract, your performance and payment bonds on the subject contract are no longer valid after 6 July 2001 due to the fact that Amwest Surety Insurance Company is no longer in business.

Please secure acceptable performance and payment bonds and return the bonds to this office within ten (10) days. If bonds are not received within ten (10) days, a stop work letter will be issued.

A copy of this letter is being furnished to our Office of Counsel and to our Pittsburgh Construction Area Office.

If you have any questions, concerning this matter, please contact Ms. Charlotte J. Tigner at (412) 395-7464.

Sincerely,

Michael S. DeStefano
Contracting Officer

CF: CD-P OC CT-0

# EXHIBIT G

PIETRAGALLO BOSICK & GORDON
ATTORNEYS AT LAW

THE THIRTY-EIGHTH FLOOR
ONE OXFORD CENTRE
PITTSBURGH, PENNSYLVANIA 15219

TELEPHONE NO.: 412-263-2000
FACSIMILE NO.: 412-261-5295

DIRECT DIAL NO.: (412) 263-1839
E-MAIL: bks@pbandg.com

July 20, 2001

*VIA FACSIMILE*

Pittsburgh Area Engineer Office
3510 Grand Avenue, Neville Island
Pittsburgh, PA 15225-1584

Attention: Bill Lubich

RE: PEWARS Corps. Of Engineers
Your Contract No.: DACW59-99-C-0002

Dear Counsel:

This firm represents Airport Industrial Park, Inc., d/b/a P.E.C. Contracting Engineers.

We have been advised by our client that an issue has arisen with regard to the nature of the performance bond and the payment bond. Specifically, the Corp. has questioned whether the payment bond is covered by the Reinsurance Agreement. For your reference, copies of PEC's performance bond, payment bond and Reinsurance Agreement are attached hereto.

As you will note, both the performance bond and the payment bond are issued under Bond No. 1382830. Item 4C of the Reinsurance Agreement specifically references that bond number. As such, the Reinsurance Agreement clearly contemplates and covers both the performance bond and the payment bond.

The only reason the payment bond is on a separate form is because it is not for the entire contract sum.

Based upon the above, there should be no question by the Court that the Reinsurance Agreement covers both the payment bond and the performance bond. If the Corp. of Engineers

U.S. Army Engineer District
July 20, 2001
Page -2-

has some information contrary to the above, please so advise. Otherwise, there does not appear to be any basis for the Corp.'s position to the contrary.

Very truly yours,

Stacey F. Vernallis

Stacey F. Vernallis

BKS/cmk
Enclosure
cc: Charlotte Tigner (via telefax)
Paul E. Chambers (via telefax)

BOND NO.: 1382830

## PERFORMANCE BOND
*(See instructions on reverse)*

DATE BOND EXECUTED *(Must be same or later than date of contract)* March 25 1999

OMB No.: 9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existi[ng] data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate [or] any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GS[A], Washington, DC 20405

PRINCIPAL (Legal name and business address)

Airport Industrial Park, Inc. d/b/a
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, PA 15224

TYPE OF ORGANIZATION ("X" one)
☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☑ CORPORATION

STATE OF INCORPORATION
Pennsylvania

SURETY(IES) *(Name and business address)*

AMWEST SURETY INSURANCE COMPANY
4 NorthShore Center, Ste 500
106 Isabella Street
Pittsburgh, PA 15212

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 4 | 646 | 931 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 03/25/1999 | DACW59-99-C-0002 |

OBLIGATION
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the pen[al] sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing action or actions against any or all of us. For a[ll] other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability i[s] indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:
The Principal has entered into the contract identified above.

THEREFORE:
The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and an[y] extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter ar[e] made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C 270a- 270e), whic[h] are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:
The Principal and Surety((ies) executed this performance bond and affixed their seals on the above date.

PRINCIPAL

| | 1. | 2. | 3. | Corporate Seal |
|---|---|---|---|---|
| SIGNATURE(S) | [signature] (Seal) | (Seal) | (Seal) | |
| NAME(S) & TITLE(S) *(Typed)* | Paul E. Chambers<br>President | | | |

INDIVIDUAL SURETY(IES)

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) *(Typed)* | | |

CORPORATE SURETY(IES)

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | AMWEST SURETY INSURANCE COMPANY<br>4 NorthShore Cnt #500, Pittsburgh, PA 15212 (Seal) | STATE OF INC. NEBRASKA | LIABILITY LIMIT $ 2,510,000.00 | [Seal: AMWEST SURETY INSURANCE COMPANY, INCORPORATED DEC. 14, 1995, NEBRASKA] |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. Attorney-in-Fact James K. Flavion | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

BOND NO. 1382830

## CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-In-Fact | 2. | | |

| BOND PREMIUM | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|
| | | 33,451.00 |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)". In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal"; and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

BOND NO.: 1382830 PREMIUM: PAGE ONE OF TWO PAGES

| PAYMENT BOND | DATE BOND EXECUTED (Must be same or later than date of contract) March 25 1999 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office OF Federal Acquisition Washington, DC. 20405; and to the Office of Management and the Budget, Paperwork Reduction Project (9000-0045). Washington, D C 20503

PRINCIPAL (Legal name and business address)

Airport Industrial Park, Inc. d/b/a
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, PA 15224

TYPE OF ORGANIZATION ("X" one)
☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☑ CORPORATION

STATE OF INCORPORATION
Pennsylvania

SURETY(IES) (Name and business address)

AMWEST SURETY INSURANCE COMPANY

4 NorthShore Center, Ste 500
106 Isabella Street
Pittsburgh, PA 15212

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 1 | 858 | 772 | 40 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 03/25/1999 | DACW59-99-C-0002 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly" and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

PRINCIPAL

| | | | |
|---|---|---|---|
| Signature(s) | 1. [signature] (Seal) | 2. (Seal) | 3. (Seal) |
| Name(s) & Title(s) (Typed) | 1. Paul E. Chambers President | 2. | 3. |

INDIVIDUAL SURETIES

| | | |
|---|---|---|
| Signature(s) | 1. (Seal) | 2. (Seal) |
| Name(s) (Typed) | 1. | 2. |

CORPORATE SURETY(IES)

| SURETY A | | | | |
|---|---|---|---|---|
| Name & Address | AMWEST SURETY INSURANCE COMPANY 4 NorthShore Ctr #500, Pittsburgh, PA 15212 | STATE OF INC. NEBRASKA | LIABILITY LIMIT $ 2,510,000.00 | |
| Signature(s) | 1. [signature] | 2. | | |
| Name(s) & Titles (Typed) | 1. Attorney-In-Fact James K. Flavion | 2. | | |

AMWEST SURETY INSURANCE COMPANY INCORPORATED DEC. 14, 1995 NEBRASKA

NSN 7540-01-152-8061 25-206 STANDARD FORM 25-A (REV 1-90) Prescribed by GSA

BOND NO. 1382830

PAGE TWO OF TWO PAGES

## CORPORATE SURETY(IES) (Continued from page one)

| | | | | |
|---|---|---|---|---|
| SURETY B | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Titles (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY C | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Titles (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY D | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Titles (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY E | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Titles (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY F | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Titles (Typed) | 1. Attorney-In-Fact | 2. | | |
| SURETY G | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Titles (Typed) | 1. Attorney-In-Fact | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270 a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)". In the space (designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal"; and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction regarding adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# REINSURANCE AGREEMENT FOR A MILLER ACT PERFORMANCE BOND

*(See instructions on reverse)*

| | |
|---|---|
| **1. DIRECT WRITING COMPANY ***<br>Amwest Surety Insurance Company<br>5230 Las Virgenes Road<br>Calabasas, CA 91302 | **1A. DATE DIRECT WRITING COMPANY EXECUTES THIS AGREEMENT**<br>March 25, 1999<br>**1B. STATE OF INCORPORATION**<br>Nebraska |
| **2. REINSURING COMPANY ***<br>Swiss Reinsurance America Corporation<br>237 Park Avenue<br>New York, NY 10017<br>917-368 4000 | **2A. AMOUNT OF THIS REINSURANCE**<br>$ 2,646,931.00<br>**2B. DATE REINSURING COMPANY EXECUTES THIS AGREEMENT**<br>March 25, 1999<br>**2C. STATE OF INCORPORATION**<br>New York |

| **3. DESCRIPTION OF CONTRACT** | | **4. DESCRIPTION OF BOND** | |
|---|---|---|---|
| **3A. AMOUNT OF CONTRACT**<br>$4,646,931.00 | | **4A. PENAL SUM OF BOND**<br>$4,646,931.00 | |
| **3B. CONTRACT DATE**<br>March 25, 1999 | **3C. CONTRACT NO.**<br>DACW59-99-C-0002 | **4B. DATE OF BOND**<br>March 25, 1999 | **4C. BOND NO.**<br>1382830 |
| **3D. DESCRIPTION OF CONTRACT**<br>New Dock Front, Pittsburgh Engineer Warehouse and Repair Shops, Neville Island, PA | | **4D. PRINCIPAL ***<br>Airport Industrial Park, Inc. d/b/a P.E.C. Contracting Engineers<br>4420 Lorigan Street<br>Pittsburgh, PA 15224 | |
| **3E. CONTRACTING AGENCY**<br>Dept of Army, Corps of Engineers | | **4E. STATE OF INCORPORATION** *(If Corporate Principal)*<br>Pennsylvania | |

AGREEMENT.

(a) The Direct Writing Company named above is bound as a surety to the United States of America on the performance bond described above, wherein the above described is the principal, for the protection of the United States on the contract described above. The contract is for the construction, alteration, or repair of a public building or public work of the United States and the performance bond was furnished to the United States under the Act of August 24, 1935, as amended (40 U.S.C. 270a-270e), known as the Miller Act. The Direct Writing Company has applied to the Reinsuring Company named above to be reinsured and countersecured in the amount shown opposite the name of the Reinsuring Company (referred to as the "Amount of this Reinsurance"), or for whatever amount less than the "Amount of this Reinsurance" the Direct Writing Company is liable to pay under or by virtue of the performance bond.

(b) For a sum mutually agreed upon, paid the the Direct Writing Company to the Reinsuring Company which acknowledges its receipt, the parties to this Agreement covenant and agree to the terms and conditions of this agreement.

TERMS AND CONDITIONS.

(a) The purpose and intent of this agreement is to guarantee and indemnify the United States against loss under the performance bond to the extent of the "Amount of this Reinsurance," or any sum less than the "Amount of this Reinsurance" that is owing and unpaid by the Direct Writing Company to the United States under the performance bond.

(b) If the Direct Writing Company fails to pay any default under the performance bond equal to or in excess of the "Amount of this Reinsurance," the Reinsuring Company covenants and agrees to pay to the United States, the obligee on the performance bond, the "Amount of this Reinsurance." If the Direct Writing Company fails to pay to the United States any default for a sum less than the "Amount of this Reinsurance" the Reinsuring Company covenants and agrees to pay to the United States the full amount of the default, or so much thereof that is not paid to the United States by the Direct Writing Company.

(c) If there is a default on the performance bond for the "Amount of this Reinsurance," or more, the Reinsuring Company and the Direct Writing Company hereby covenant and agree that the United States may bring suit against the Reinsuring Company for the "Amount of this Reinsurance" or, in the case the amount of the default is for less than the "Amount of this Reinsurance," for the full amount of the default.

WITNESS.

The Direct Writing Company and the Reinsuring Company, respectively, have caused this Agreement to be signed and impressed with their respective corporate seals by officers possessing power to sign this instrument, and to be duly attested by officers empowered thereto, on the day and date above written opposite their respective names.

* Items 1, 2, 4D—Furnish legal name, business address and ZIP Code.

NSN 7540-01-152-8075
PREVIOUS EDITION USABLE
273-102

STANDARD FORM 273 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.228(n)

# EXHIBIT H

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

CERTIFIED MAIL

Return Receipt Requested

July 31, 2001

Contracting Division

SUBJECT: Cure Notice for Contract No. DACW59-99-C-0002; New Dock Front at PEWARS

Paul E. Chambers, President
P.E.C. Contracting Engineers
P.O. Box 7872
Pittsburgh, Pennsylvania 15215

Dear Mr. Chambers,

You are notified that the Government considers your lack of progress at the work site, failure to provide an acceptable Payment Bond and reported failure to make payment to subcontractors conditions which endanger performance of the subject contract. First, project completion to date is approximately 50% and the contract completion date for all work is August 15, 2001. Second, to date we have not received an acceptable Payment Bond in accordance with contract clause FAR 52.228-15, Performance and Payment Bonds--Construction. And lastly, it has been reported that subcontractors have not been paid in accordance with the requirements of contract clause FAR 52.232-27, Prompt Payment. Therefore, unless these conditions are cured within 10 days after receipt of this notice, the Government may terminate for default under the terms and conditions of contract clause FAR 52.249-10, Default (Fixed-Price Construction).

Should you have questions regarding this matter, please contact Charlotte Tigner, Contract Specialist, at (412) 395-7464.

Sincerely,

Michael S. DeStefano
Contracting Officer

# EXHIBIT I

Contract File

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

REPLY TO
ATTENTION OF

August 17, 2001

Contracting Division

SUBJECT: Termination for Default, Contract No. DACW59-99-C-0002, New Dock Front at PEWARS

Mr. Paul E. Chambers, President
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, Pennsylvania 15224

Dear Mr. Chambers:

Contract number DACW59-99-C-0002, dated December 1, 1998, is hereby terminated for default pursuant to contract clause FAR 52.249-10, Default (Fixed-Price Construction) for the reasons that you have failed to make adequate progress, you have failed to provide an acceptable Payment Bond, and you have failed to pay your subcontractors in accordance with the contract provisions. You were issued a cure notice on July 31, 2001, and you neglected to submit a response or cure these failures. Therefore, I have no alternative but to terminate your contract for default.

Your right to proceed further under the contract is completely terminated, effective immediately upon your receipt of this notice. The work required by the subject contract may be purchased against your account, and you will be held liable for any excess costs.

The Government reserves all rights and remedies provided by law or under the contract, in addition to charging for any excess costs.

You are hereby directed to vacate the contract premises. However, prior to vacating you must secure or otherwise arrange for transfer or relinquishment of all contract materials and supplies relevant to the subject contract. You must also ensure cleanup of the site, protect any serviceable materials remaining at the site, remove any hazards, and take any other necessary steps to leave the site safe and healthful.

This notice constitutes my Final Decision as Contracting Officer that P.E.C. is in default of the subject contract. You have the right to appeal this decision under the Disputes clause to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you desire to make such an appeal, you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within 90 days of the date you receive this decision. A copy of your appeal shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate an appeal is intended, reference this decision, and identify the contract by number. The notice shall also include a copy of this decision. With regards to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 or less, or its accelerated procedure for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. 603, regarding maritime contracts) within 12 months from the date you receive this decision.

Sincerely,

Michael S. DeStefano

Michael S. DeStefano
Contracting Officer

Copy Furnished:
CELRD-OC (Gourlay)
Swiss Reinsurance America Corp.
Small Business Administration
SADBU-Pittsburgh District