UNITED STATES COURT OF FEDERAL CLAIMS

AIRPORT INDUSTRIAL PARK, INC.
d/b/a P.E.C. CONTRACTING ENGINEERS,

Plaintiff,

Case No. 02-1077C

v

HON. EMILY C. HEWITT

UNITED STATES OF AMERICA,

Defendant.

Stephen A. Hilger (P44776)
RHOADES, McKEE
Attorneys for Plaintiff
161 Ottawa Ave., N.W., Suite 600
Grand Rapids, MI 4950
(616) 235-3500

Andrew P. Averbach
Attorney for Defendant
Commercial Litigation Branch
Department of Justice, Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
(202) 307-0290

**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Airport Industrial Park, Inc. d/b/a P.E.C. Contracting Engineers ("P.E.C.") respectfully requests that Defendant's Motion for Summary Judgment be denied. There are genuine issues as to material facts regarding the cause and effect of the default termination in this case. The Affidavit of Paul Chambers on behalf of the Plaintiff demonstrates the existence of material issues of fact.

The primary thrust of Defendant's Motion is its claim that the Plaintiff, P.E.C., did not secure a new payment bond once Amwest Surety Insurance Company became insolvent. To this end, the Government relies on three FAR Sections, 48 C.F.R. §52.228-1, §52.228-15, and §52.228-2.

With regard to §52.228-1, there is no debate that a Bid Guaranty was provided. A Bid Guaranty is required under §52.228-1(a). There was a total absence of any demonstration by the Government that P.E.C. failed to provide a Bid Guaranty. The only applicable Section here in §52.228-1 deals with part (e). That Section provides that:

> "In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the Bid Guaranty is available to off-set the difference."

There was no showing by the Defendant that the Government incurred any excess in the cost to complete PEC's work. After termination, PEC's work was completed by Swiss Reinsurance America Corporation, the reinsuring company. There has also not been any showing that the Government pursued in any way any money from Swiss Reinsurance America Corporation for excess costs. The affidavit of Paul Chambers filed contemporaneously herewith establishes that Swiss Reinsurance America Corporation provided reinsurance in the amount of $2,646.931.00. This money was presumably available to the Government notwithstanding Amwest Surety Insurance Company's insolvency. If the Government never made any claim against Swiss Reinsurance America Corporation, then there is no default under §52.228-1(e) because even though the Government claims the contract was in default, there was never any liability established or asserted for any cost of acquiring the work that exceeded the amount of the original bid. Consequently, §52.228-1 is inapplicable.

The next Section argued by the Government is §52.228-15. That Section contains general provisions regarding performance and payment bonds. Nothing in that Section really merits quoting in this Brief. There is no debate that a performance-payment bond, number 1382830, was provided by P.E.C. Copies of those documents, issued by Amwest Surety Insurance Company, are attached to the Affidavit of Paul Chambers. As the Government so

clearly states in its Motion, on page 3, "these Bonds were received and approved by the Corps. counsel on April 14, 1999". Accordingly, with regard to the form and content of the performance-payment bond provided by Amwest Surety Insurance Company, the Government takes no issue. §52.228-15 is therefore inapplicable.

The final Section argued by the Government is §52.228-2, dealing with ***additional*** bond security. This argument presupposes that there must have been ***two*** bonds, one performance bond and one payment bond. That assumption here is false, as there was one bond number, which means one bond, even if the performance and payment obligations are stated on two separate government forms.

§52.228-2(a), including the introductory language, provides as follows:

> "The contractor shall promptly furnish additional security if required to protect the Government and persons supplying labor or materials under this contract, if –
>
> > (a) any surety upon any bond, or issuing financial institution for other security, furnished with this contract becomes unacceptable to the Government;"

Even though the Defendant readily acknowledges that bond number 1382830 was approved by the Government, the Defendant now claims that Amwest Surety Insurance Company became unacceptable. However, it only supposedly became unacceptable long ***after*** the contract performance should have been fully completed but for the failures and interferences by the Government. The contract was entered into on March 25, 1999 and the front page of the Solicitation, Offer and Award clearly states that PEC's work had a 365 day duration. (Defendant's Ex. A and Plaintiff's Ex. A) Had the Government properly performed under the contract, PEC's work would have been completed by March 24, 2000. Amwest Surety Insurance Company did not become insolvent until the summer of 2001, almost 18 months later. Had the

Project been timely completed as originally scheduled, and as identified by the Affidavit of Paul Chambers, the insolvency by Amwest Surety Insurance Company would not have been noticed or recognized by the Government.

Further, the Reinsurance Agreement invalidates the Defendant's argument. The Reinsurance Agreement for bond 1382830 provided reinsurance in the amount of $2,646,931.00. The Government has ***never*** made any argument that the contract was not performed for the original contract price requiring the payment of additional sums. Accordingly, if in fact the inability to provide an alternate bond to replace the Amwest Surety Insurance Company payment bond was in fact a breach, the breach would have been immaterial since no claim has ever been made where the contract finally paid exceeded the original contract amount. At best, if a breach at all, it was an immaterial breach.

Perhaps most importantly, the cause of the delay was the Government's own activities. As demonstrated by the Affidavit of Paul Chambers, on December 1, 1998, the Department of the Army issued the Solicitation Offer and Award for Solicitation No. DACW59-99-B-0001, which resulted in the contract which forms the basis for this proceeding. This contract required the installation of a new sheet pile wall adjacent to existing sheet pile cells, and the construction of a cast in place concrete waler, the installation of rock anchors and soil anchors, the placement of controlled low strength fill material as well as select material, as well as metal work and site work. The Affidavit of Paul Chambers also demonstrates that the Department of the Army significantly delayed the progress of the work because of its conduct in failing to recognize and deal with underwater soils. The Affidavit establishes that the owner specified materials were unavailable and that it was very difficult to comply with the Government's overall design intent. The Government procurred soil borings and soil testings on dry land as opposed to underwater.

The underwater soil material was unacceptable. When the Government attempted to rectify the situation, the Project was halted for a considerable period of time, which prevented the timely completion of the work. Had this delay not been encountered, the work would have concluded prior to the insolvency of Amwest Surety Insurance Company.

Once this unforeseen work was discovered, there were considerable changes that needed to be paid by the Government. These changes will be part of this litigation. The amount is approximately $1,920,000.00. Once those changes took place, no bonding company would touch this Project and provide P.E.C. with alternate bonding.

The Government should be estopped from making any claim that the Reinsurance Agreement by Swiss Reinsurance America Corporation did not provide appropriate payment bond guarantees. This Reinsurance Agreement is dated in March of 1999, which is about when the Amwest payment bond was issued. The Government had the Reinsurance Agreement containing the single bond number early on during the project, and found it acceptable. It never said, when it received the Reinsurance Agreement, that it needed a similar document for the Amwest Payment bond. While the Bond language is not precisely clear, it does reference only one bond number, and that bond number is the same for both the Amwest payment and performance portions of the bond. Had Amwest not been required to use the Government's forms, bond number 1382850 would have been printed on a single form called a "Performance and Payment Bond", and there would have been no debate that the reinsurance agreement covered both aspects of the bond. If the Government wanted to take the position that it needed a ***separate*** Reinsurance Agreement for the payment bond, the time to make that argument would have been at the time the Reinsurance Agreement was issued, and, as noted in the Government's Brief, accepted by the Defendant. It is totally untimely, and certainly unfair to the interests of

P.E.C., for the Government to wait until a problem arose, and then somehow claim that the documents which previously were acceptable were now somehow deficient in some way. This is taking unfair advantage of an undisclosed technicality, particularly when no bond claim has been demonstrated.

Accordingly, ***first*** and foremost, P.E.C. met its bonding obligations. PEC provided a bond which was accepted by the Government. ***Second***, even though P.E.C. could not provide a replacement payment bond for the Amwest bond, it had reinsurance through Swiss Reinsurance America Corporation. The bond numbers were the same. ***Third***, even had a claim been made, the breach in this case was caused by the Government and its failure to properly design the work to be performed such that the contracting parties who performed the work would encounter soil which would allow the completion of the work. As a result, the Project was considerably delayed, costing P.E.C. considerably more money, and preventing them from obtaining substitute bonding even under the best of circumstances.

For these reasons, and for the reasons stated both in the Revised Findings of Fact as well as the Affidavit of Paul Chambers, P.E.C. would respectfully request that this Court deny the Government's Motion for Summary Judgment.

Dated: October 8, 2003

RHOADES McKEE
Attorneys for Plaintiff

By: /s/
Stephen A. Hilger (P44776)
Business Address:
161 Ottawa Avenue, N. W., Suite 600
Grand Rapids, MI 49503
Telephone: (616) 235-3500