IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AIRPORT INDUSTRIAL PARK, INC.<br>d/b/a P.E.C. CONTRACTING ENGINEERS<br><br>Plaintiff,<br><br>v.<br><br><br>THE UNITED STATES<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br>No. 02-1077C<br>(Judge Hewitt) |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, WITH APPENDIX**[1]

## I. There Is No Genuine Dispute That P.E.C. Failed To Maintain An Adequate Payment Bond

P.E.C. offers two arguments concerning its failure to maintain an adequate payment bond. First, P.E.C. asserts that, upon the insolvency of its surety, its obligation to provide a payment bond was satisfied by virtue of a reinsurance agreement between the surety and Swiss Reinsurance America Corporation. Alternatively, P.E.C. contends that the Corps should be estopped from asserting that the reinsurance agreement does apply to the payment bond because the Government did not raise the issue when it approved the reinsurance agreement covering the performance bond. Neither of these arguments warrants denial of our motion.

As established in our brief, the reinsurance agreement, by its terms, does not apply to the payment bond issued by Amwest. Although P.E.C. asserts that "[t]he Bond language is not precisely clear," Pl.'s Response at 5, the language of the reinsurance agreement is unambiguous – it provides additional security to the Government in the event Amwest fails to make payment due

[1] We incorporate into this reply the definitions employed in our motion for summary judgment. "DeStefano Reply Decl." refers to the reply Declaration of Michael S. DeStefano, which is appended to this reply.

"under the performance bond." As a result, when Amwest was declared insolvent, only P.E.C.'s performance bond obligation was satisfied (to the extent of the amount specified in the reinsurance agreement), and no payment bond existed to guarantee payment of P.E.C.'s contractors, as required by the Contract. This condition was a material breach that warranted termination for default.[2]

Equally without merit is P.E.C.'s estoppel argument, which is premised upon the assertion that the Corps did not complain about the lack of reinsurance for the payment bond when it approved the reinsurance agreement, and cannot be heard to complain about it now. This argument fails for the simple reason that reinsurance was not required under the terms of either the payment bond or the performance bond. Neither Amwest's procurement of reinsurance with respect to the performance bond nor the Government's approval of the reinsurance agreement in any way triggered an obligation on the part of the Government to inquire concerning the procurement of reinsurance with respect to the Amwest payment bond. DeStefano Reply Decl. ¶ 3. For whatever reason, Amwest obtained reinsurance solely with respect to the performance bond, and the Government approved the reinsurance agreement as a matter of course. A reinsurance agreement with respect to the payment bond was not required, and the Corps'

[2] P.E.C.'s assertion that any breach occasioned by the lack of a payment bond was immaterial "since no claim has ever been made where the contract finally paid exceeded the contract amount," Pl.'s Response at 4, unduly confuses the issue. The Contract obligated P.E.C. to maintain both a performance bond and a payment bond, and specifically provided that and the contractor's failure to obtain adequate bonding would justify a termination for default. FAR § 52.228-1(d), 48 C.F.R. § 52.228-1 (1996). The Government further notes that two of P.E.C.'s subcontractors have brought claims before the Armed Services Board of Contract Appeals seeking to recover from the Government sums that P.E.C. has failed to pay to them. See Marine Contractors, Inc., ASBCA No. 54017, 03-1 BCA P 32,240,2003 WL 1795678 (April 2, 2003); Coastal Drilling, Inc., ASBCA No. 54023, 03-1 BCA P 32,241, 2003 WL 179569 (April 1, 2003).

"failure" to insist that one be procured one does not estop the Government from relying on the lack of a payment bond to justify the termination of P.E.C. for default.

## II. P.E.C.'s Arguments Concerning Delay Are Unpersuasive

P.E.C. devotes much of its opposition to arguing that the Corps delayed the completion of the project called for by the Contract, and that, but for the delay, there would have been no need to obtain a replacement payment bond. The Court should reject these arguments for three reasons.[3]

First, P.E.C. voluntarily executed a series of modifications to the Contract that, in addition to increasing the value of the Contract, extended the time for completion until long after Amwest was declared insolvent (in June 2001). Among others, P.E.C. executed Modification A00002, which extended the completion date through June 27, 2000; Modification P00002, which extended the completion date through September 23, 2000; Modification A00005, which extended the completion date through October 27, 2000; and Modification P00004/Change "AE", which extended the time for completion through August 15, 2001. DeStefano Reply Decl. ¶¶ 6-7 & Exs. A-D. Having executed a series of modifications that extended the time to complete the work called for by the Contract, P.E.C. cannot now complain about the Corp's insistence that P.E.C. continue to satisfy its bonding requirements until the time of completion. As long as work that P.E.C. agreed to perform remained to be completed, P.E.C. was responsible under the Contract for obtaining proper bonding, and the failure to do so justified its termination for

[3] The Government disputes P.E.C.'s assertions that the Corps delayed completion of the project, and that this delay somehow justifies or excuses its failure to maintain an adequate payment bond. See DeStefano Reply Decl. ¶ 5. However, the Court need not address the merits of P.E.C.'s delay arguments for the reasons set forth above.

default.

Second, the assertion that the Government delayed the project was never brought before the contracting officer. DeStefano Reply Decl. ¶ 4. P.E.C. acknowledged as much when it voluntarily moved the Court to dismiss its claims based upon paragraphs 9 and 10 of the complaint (asserting that the Government delayed completion of the project). Its attempt to bring in through the back door what it has already acknowledged cannot be brought in through the front should not be countenanced.

Third, beyond the fact that it never raised the issue of delay before the contracting officer, P.E.C. never even responded to the Government's July 31, 2001 cure notice. DeStefano Decl. ¶ 10. When the Government has reasonable grounds to believe that a contractor will not fulfill its contractual obligations, it can issue a cure notice. If the contractor fails to correct the situation or explain or communicate with the Government during the period when corrective action is called for, termination for default is warranted. See, e.g., Danzig v. AEC Corp., 224 F.3d 1333, 1337 (Fed. Cir. 2000) (citing case law and Restatement (Second) of Contracts § 251 (1981)); A.R. Sales Co., Inc. v, United States, 51 Fed. Cl. 370, 373 (2002) (holding that "failure to provide reasonable assurances in response to a well-justified cure notice suffices as a justification for the termination of the contract for default").

Here, on July 6, 2001, upon being informed of the insolvency of P.E.C.'s surety, the Corps informed P.E.C. about the need to obtain substitute bonding. After P.E.C. incorrectly claimed that the reinsurance agreement covered the payment bond, the Corps issued a formal cure notice on July 31, 2001, to which P.E.C. never responded. DeStefano Decl. ¶¶ 6-11. Because P.E.C. failed to cure its material breach within the cure period (apparently operating

under the belief that no breach had occurred), termination for default was warranted.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in our motion, we respectfully request that the Court grant defendant's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Andrew P. Averbach
ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-0290
Fax (202) 514-8624
Attorneys for Defendant

OF COUNSEL:
WILLIAM A. LUBICK
Assistant District Counsel
U.S. Army Corps of Engineers,
Pittsburgh District
1813 Federal Building
1000 Liberty Avenue
Pittsburgh, PA 15222-1486
Tel. (412) 395-7495

October 21, 2003

CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2003, a copy of the foregoing DEFENDANT'S REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT, WITH APPENDIX was filed electronically. I understand that notice of this filing will be sent by all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Andrew P. Averbach
Andrew P. Averbach

# APPENDIX: REPLY DECLARATION OF MICHAEL S. DESTEFANO

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AIRPORT INDUSTRIAL PARK, INC. d/b/a P.E.C. CONTRACTING ENGINEERS | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-1077C (Judge Hewitt) |
| THE UNITED STATES | ) | |
| Defendant. | ) | |

**REPLY DECLARATION OF MICHAEL S. DESTEFANO**

I, Michael S. DeStefano, make the following declaration in accordance with 28 U.S.C. § 1746:

1. I am currently a Contracting Officer for the Department of the Army, Pittsburgh District, Corps of Engineers. I submit this declaration in further support of defendant's motion for summary judgment.

2. I have reviewed the affidavit of Paul Chambers submitted in opposition to the Government's motion for summary judgment. It is inaccurate and/or misleading in several important respects.

3. First, Mr. Chambers states at paragraph 9 of his affidavit "[a]t no time did the [Corps] request a separate reinsurance agreement for the payment portion of the bond in the years 1999 or 2000." Although it is true that no request was made, it is also true that at the time of award there was no reason for the Corps to require P.E.C.'s surety to obtain reinsurance with respect to the payment bond. P.E.C. had satisfied its payment bond obligation regardless of whether Amwest obtained reinsurance and, as a result, there was no reason for the Corps to

demand additional reinsurance when the award was made or any time prior to Amwest's insolvency.

4. Second, paragraph 10 of Mr. Chambers affidavit makes a series of allegations concerning deficient design and testing, including the lack of any soil testing, and other alleged misconduct on the part of the Corps that allegedly delayed the completion of the project. At the outset, it bears noting that none of these issues was ever raised before me as contracting officer and many are to vague even to respond to.

5. Although it is true, as Mr. Chambers states in his affidavit, that soil testing was originally done on land, the parties later agreed that testing should be done "in-the-wet," and agreed to modify the contract at issue in this case accordingly (as set forth in the next paragraph). As to Mr. Chambers's reference to the "unavailability of owner specified materials" (which I presume is a reference to delays in obtaining sheet piling), the obligation to procure materials was P.E.C.'s, pursuant to the terms of the contract. Nonetheless, the Corps assisted in this procuring the pilings when P.E.C. was unable to purchase them on credit by arranging for them to be delivered to the job site and accepting them there. It is therefore difficult to understand how the Corps could possibly have delayed the project in this respect.

6. P.E.C. voluntarily executed a series of modifications to the contract that, in addition to substantially increasing the value of the contract by hundreds of thousands of dollars, extended the time for completion until long after P.E.C.'s surety was declared insolvent (in June 2001). Among others, P.E.C. signed off on Modification A00002, which extended the completion date through June 27, 2000; Modification P00002, which extended the completion

date through September 23, 2000; Modification A00005, which extended the completion date through October 27, 2000; and Modification P00004/Change "AE", which extended the time for completion through August 15, 2001.

7. True and correct copies of each of these modifications are annexed hereto as Exhibits A, B, C, and D, respectively.

I declare under penalty of perjury that the foregoing is true and correct Executed on October 20th, 2003.

MICHAEL S. DESTEFANO

# EXHIBIT A

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE | PAGE 1 OF PAGES 2

2. AMENDMENT/MODIFICATION NO. A00002 CHANGE "AB"
3. EFFECTIVE DATE
4. REQUISITION/PURCHASE REQ. NO.
5. PROJECT NO (If applicable)

6. ISSUED BY CODE

U.S. Army Engineer District, Pittsburgh
William S. Moorhead Federal Building
1000 Liberty Avenue
Pittsburgh, Pennsylvania 15222-4186

7. ADMINISTERED BY (If other than Item 6) CODE

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

P.E.C. Contracting Engineers
P.O. Box 7872
Pittsburgh, PA 15215

CODE | FACILITY CODE

(√) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACTS/ORDER NO. DACW-99-C-0002

10B. DATED (SEE ITEM 13) 99 March 25

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

96 NA X 4902.0000 H41999 08 2439 1000.004.003963642520001TSK $99,971.16 increase

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

( ) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF CONTRACT CLAUSE 88 "SUSPENSION OF WORK"

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

It has been determined necessary to modify the above-numbered contract for the New Dock Front, PEWARS, to compensate the contractor for suspension of work by the Government.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Paul E. Chambers
President

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
Joseph O. Elwell, Jr., P.E.
Authorized Representative of the Contracting Officer

15B. CONTRACTOR/OFFEROR
Paul E. Chambers Pres.
(Signature of person authorized to sign)

15C. DATE SIGNED 2/14/00

16B. UNITED STATES OF AMERICA
BY Joseph O. Elwell Jr.
(Signature of Contracting Officer)

16C. DATE SIGNED 2/16/00

**CONTRACT NO:** DACW59-99-C-0002 
**MODIFICATION NO:** A00002
**CHANGE ORDER:** AB
**CONTRACTOR:** P.E.C. Contracting Engineers

Therefore, the contract is hereby modified in the following particulars:

1. The Government shall compensate the contractor for suspension of work for the period of 13 August 1999 thru 15 October 1999. (45 work days).

2. As a result of the above modification, one (1) new lump sum item will be added to the contract as follows:

| ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| A00002 | Suspension of work | 1 | Job | Sum | **$99,971.16** |

3. The total contract price is increased in the amount of $99,971.16.

4. All work shall be performed in accordance with the applicable portions of the contract plans and specifications, and as directed by the Authorized Representative of the Contracting Officer.

5. Contract completion time has been extended by 63 calendar days (25April thru 27 June 2000).

6. This adjustment constitutes compensation in full on behalf of the contractor and its subcontractors and suppliers, for all costs and markups directly and indirectly attributable to the changes ordered herein, for all delays related thereto and for performance of the changes within the time frame of the contract.

7. If the foregoing is acceptable, it is requested that you sign in Block 15B, complete Block 15C of this form, and return the original and 3 copies to this office.

CELRP-CD-A

PRICE NEGOTIATION MEMORANDUM

CONTRACT NO.: DACW59-99-C-0002
MODIFICATION NO.: A00002
CHANGE: AB
CONTRACTOR: P.E.C. Contracting Engineers

1. **CONTRACT DESCRIPTION:** New Dock Front, PEWARS

2. **DESCRIPTION OF CHANGE:** The change provides compensation to the contractor for the Suspension of work (45 days) by Government. The change results in a cost increase of $99,971.16. Contract completion time is also extended by 45 days.

3. **NECESSITY FOR CHANGE:** The contract for the New Dock Front wall was awarded on 25 March 1999 in the amount of $4,646,931.00. During a pre-work construction meeting, the contractor voiced concerns about a change in site conditions pertaining to the quantity and quality of existing riverbed sand and gravel materials located in front of the existing dock front wall. Pittsburgh District confirmed through subsequent subsurface investigations that areas in front of the wall had scoured and were below the design elevation, while other areas contained depths of unsuitable silt materials which were not identified during the design phase. In order to meet design criteria and assure long term stability of the proposed new dock front structure, the unsuitable materials must be dredged and replaced with sand and gravel materials to provide satisfactory passive resistance at the base of the new wall. Thus it became necessary to suspend the work.

4. **REASON FOR OMISSION FROM ORIGINAL PLANS AND PECIFICATIONS:**
DIFFERING SITE CONDITIONS AMPRS Code # 7

5. **SUMMARY OF COST/PRICE ANALYSIS:** On 12 January 2000, the contractor submitted his initial equipment suspension standby costs covering the period from 13 August thru 15 October 1999, in the amount of $146,742.27. Following a review and analysis of the standby costs, Government informed the contractor that his standby costs were excessive. The contractor agreed to re-evaluate his costs and to get back with Government. On 21 January 2000, a meeting was convened in the District Area Office at

Neville Island to discuss the contractor's revised standby costs. The revised cost was in the amount of $120,000.00. The amount was tentatively considered, pending Government's final review and analysis of the standby costs. Following a final review and analysis of the standby costs, Government has determined that $99,971.16 is considered to be fair and reasonable.

6. **TIME ANALYSIS: Contract** completion time has been extended by 63 calendar days (25 April thru 27 June 2000).

7. **AUTHORITY FOR CHBANGE:** Contract Clause 52.242-14, SUSPENSION OF WORK (APR 1984)

8. **FUNDS:** PR&C W81ET493020079, in the amount $99,971.16.

PREPARED BY: Jesse B. Ghoah
Jesse B. Ghoah
Civil Engineer

2/16/2000
Date

APPROVED BY: Joseph O. Elwell Jr.
Joseph O. Elwell, Jr., P.E.
Authorized Representative
of the Contracting Officer

2/16/00
Date

**EXHIBIT B**

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 3

2. AMENDMENT/MODIFICATION NO.: FC0002
3. EFFECTIVE DATE: 15-Feb-2000
4. REQUISITION/PURCHASE REQ. NO.
5. PROJECT NO. (If applicable)

6. ISSUED BY CODE H4P0000
CONTRACTING DIVISION
US ARMY CORPS OF ENGINEER
WM S MOORHEAD FED BLDG
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

7. ADMINISTERED BY (If other than item 6) CODE CT-P-002
US ARMY ENGINEER DISTRICT PGH
727 WM S MOORHEAD FED BLDG
1000 LIBERTY AVE
PGH, PA 15222-4186

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

AIRPORT INDUSTRIAL PK INC DBA
P E C CONTRACTING ENGINEERS
PO BOX 7872

PITTSBURGH, PA 15215

CODE 119116887 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.
9B. DATED (SEE ITEM 11)
X 10A. MOD. OF CONTRACT/ORDER NO. DACW59-99-C-0002
X 10B. DATED (SEE ITEM 13) 25-Mar-1999

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning ______ copies of the document; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN THE REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
AA 96NAX4902.0000 H41999 08 2439 1099.009.005 96364 2520 001TSK 000000000000 $ 4,646,931.00

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

☐ D. OTHER (Specify type of modification and authority)

REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY
[signature] 2/16/00
OFFICE OF COUNSEL DATE

E. IMPORTANT: Contractor ☐ is not, X is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

IT HAS BEEN DETERMINED NECESSARY TO MODIFY THE ABOVE-NUMBERED CONTRACT FOR THE NEW DOCK FRONT,PEWARS, TO COMPENSATE THE CONTRACTOR FOR SUSPENSION OF WORK BY THE GOVERNMENT. THE AMOUNT IS SUBJECT TO POST AWARD AUDIT. THE ATTACHED CLAUSE 52.2320-4502 CONTINUING CONTRACT CLAUSE IS NOW INCORPORATED INTO CONTRACT DACW59-99-D-0002.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print): PAUL E. CHAMBERS PRES.
16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print): RONALD J DUNNINGTON, CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR: [signature] Paul E. Chambers Pres
(Signature of person authorized to sign)
15C. DATE SIGNED: 2·17·00
16B. UNITED STATES OF AMERICA BY [signature]
(Signature of Contracting Officer)
16C. DATE SIGNED: 16-Feb-2000



DUPLICATE ORIGINAL

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DACW59-99-C-0002-P00002 | PAGE 2 OF 3 |
|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
AIRPORT INDUSTRIAL PK INC DBA

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

THEREFORE, THE CONTRACT IS HEREBY MODIFIED IN THE FOLLOWING PARTICULARS:

1. THE GOVERNMENT SHALL COMPENSATE THE CONTRACTOR FOR SUSPENSION OF WORK (61 WORK DAYS). 16 OCTOBER 1999 THRU 11 JANUARY 2000.
2. AS A RESULT OF THE ABOVE MODIFICATION, ONE (1) NEW LUMP SUM ITEM WILL BE ADDED TO THE CONTRACT AS FOLLOWS:

| ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| P00001 | SUSPENSION OF WORK | 1 | JOB | SUM | $107,773.74 |

3. THE TOTAL CONTRACT PRICE IS INCREASED IN THE AMOUNT OF $107,773.74.
4. ALL WORK SHALL BE PERFORMED IN ACCORDANCE WITH THE APPLICABLE PORTIONS OF THE CONTRACT PLANS AND SPECIFICATIONS, AND AS DIRECTD BY THE AUTHORIZED REPRESENTATIVE OF THE CONTRACTING OFFICER.
5. CONTRACT COMPLETION TIME HAS BEEN EXTENDED 88 CALENDAR DAYS (28 JUNE THRU 23 SEPT 2000)
6. THIS ADJUSTMENT CONSTITUTES COMPENSATION IN FULL ON BEHALF OF THE CONTRACTOR AND ITS SUBCONTRACTORS AND SUPPLIERS. FOR ALL COSTS AND MARKUPS DIRECTLY AND INDIRECTLY ATTRIBUTABLE TO THE CHANGES ORDERED THEREIN FOR ALL DELAYS RELATED THERETO AND FOR PERFORMANCE OF THE CHANGES WITHIN THE TIME FRAME OF THE CONTRACT.
7. IF THE FOREGOING IS ACCEPTABLE, IT IS REQUESTED THAT YOU SIGN IN BLOCK 15B. COMPLETE BLOCK 15C OF THIS FORM, AND RETURN THE ORIGINAL AND 3 COPIES TO THIS OFFICE.

52.2320-4502 CONTINUING CONTRACTS (ALTERNATE) (EFARS 52.232-5002)

(a) Funds are not available at the inception of this contract to cover the entire contract price. The sum of has been reserved for this contract and is available for payment to the Contractor during the current fiscal year. It is expected that Congress will make appropriations for future fiscal years from which additional funds, together with funds provided by one or more non-federal project sponsors will be reserved for this contract. The liability of the United States for payments beyond the funds reserved for this contract is contingent on the reservation of additional funds.

(b) Failure to make payments in excess of the amount currently reserved, or that may be reserved from time to time, shall not be considered a breach of this contract, and shall not entitle the Contractor to a price adjustment under the terms of this contract except as specifically provided in paragraphs (e) and (h) below.

(c) The Government may at any time reserve additional funds for payments under the contract if there are funds available for such purpose. The Contracting Officer will promptly notify the Contractor of any additional funds reserved for the contract by



DUPLICATE ORIGINAL

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DACW59-99-C-0002-P00002 | PAGE<br>3 OF 3 |
|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
AIRPORT INDUSTRIAL PK INC DBA

issuing an administrative modification to the contract.

(d) If earnings will be such that funds reserved for the contract will be exhausted before the end of any fiscal year, the Contractor shall give written notice to the Contracting Officer of the estimated date of exhaustion and the amount of additional funds which will be needed to meet payments due or to become due under this contract during that fiscal year. This notice shall be given not less than 45 nor more than 60 days prior to the estimated date of exhaustion.

(e) No payments will be made after exhaustion of funds except to the extent that additional funds are reserved for the contract. If and when sufficient additional funds are reserved, the Contractor shall be entitled to simple interest on any payment that the Contracting Officer determines was actually earned under the terms of this contract and would have been made except for exhaustion of funds. Interest shall be computed from the time such payment would otherwise have been made until actually or constructively made, and shall be at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41, 85 STAT 97, as in effect on the first day of the delay in such payment.

(f) Any suspension, delay, or interruption of work arising from exhaustion or anticipated exhaustion of funds shall not constitute a breach of this contract and shall not entitle the Contractor to any price adjustment under a "Suspension of Work" or similar clause or in any other manner under this contract.

(g) An equitable adjustment in performance time shall be made for any increase in the time required for performance of any part of the work arising from exhaustion of funds or the reasonable anticipation of exhaustion of funds.

(h) If, upon the expiration of sixty (60) days after the beginning of the fiscal year following an exhaustion of funds, the Government has failed to reserve sufficient additional funds to cover payments otherwise due, the Contractor, by written notice delivered to the Contracting Officer at any time before such additional funds are reserved, may elect to treat his right to proceed with the work as having been terminated. Such a termination shall at no cost to the Government, except that, to the extent that additional funds to make payment therefore are allocated to this contract, it may be treated as a termination for the convenience of the Government.

(i) If at any time it becomes apparent that the funds reserved for any fiscal year are in excess of the funds required to meet all payments due or to become due the Contractor because of work performed and to be performed under this contract during the fiscal year, the Government reserves the right, after notice to the Contractor, to reduce said reservation by the amount of such excess.

(j) The term "Reservation" means monies that have been set aside and made available for payments under this contract.



DUPLICATE ORIGINAL

# EXHIBIT C

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE | OF PAGES |
|---|---|---|
| | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| A0000 5 Change "AH" | | | |

| 6. ISSUED BY CODE | 7. ADMINISTERED BY *(If other than Item 6)* CODE |
|---|---|
| U.S. ARMY ENGINEER DISTRICT PITTSBURGH<br>727 W.S. MOORHEAD FEDERAL BUILDING<br>1000 LIBERTY AVENUE<br>PITTSBURGH, PA 15222-4185 | PITTSBURGH AREA OFFICE<br>3610 GRAND AVENUE<br>PITTSBURGH, PENNSYLVANIA 15225-1586 |

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*
P.E.C. Contracting Engineers
P.O. Box 7872
Pittsburgh, Pennsylvania 15215

CODE | FACILITY CODE

| (✓) | |
|---|---|
| | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED *(SEE ITEM 11)* |
| X | 10A. MODIFICATION OF CONTRACTS/ORDER NO. DACW59-99-C-0002 |
| | 10B. DATED *(SEE ITEM 13)* 99 March 25 |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
96 NA x 4902.0000 H41999 08 2439 1000.004..00396364252000TSK $85,000.00 increase

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (✓) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: CONTRACT CLAUSE 88 "SUSPENSION OF WORK" |
| | D. OTHER *(Specify type of modification and authority)* |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

It has been determined necessary to modify the above-numbered contract for the New Dock Front, PEWARS, to compensate the contractor for suspension of work during the period 11 January 2000 thru 28 February 2000, by the Government.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* |
|---|---|
| Paul E. Chambers<br>President | Joseph O. Elwell, Jr., P.E.<br>Authorized Representative of the Contracting Office |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| Paul E. Chambers Pres.<br>(Signature of person authorized to sign) | 5/31/00 | BY Joseph O. Elwell, Jr.<br>(Signature of Contracting Officer) | 5/31/00 |

**CONTRACT NO:** DACW59-99-C-0002
**MODIFICATION NO:** A00004
**CHANGE ORDER:** AH
**CONTRACTOR:** **P.E.C. Contracting Engineers**

Therefore, the contract is hereby modified in the following particulars:

1. The Government shall compensate the contractor for suspension of work during the period of January 11, 2000 thru February 28, 2000.

2. As a result of the above modification, one (1) new lump sum item will be added to the contract as follows:

| ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| A00004 | Suspension Costs 11 January Thru 28 February 2000 | 1 | Job | Sum | $85,000.00 |

3. The total contract price is increased in the amount of $85,000.00

4. All work shall be performed in accordance with the applicable portions of the contract plans and specifications, and as directed by the Authorized Representative of the Contracting Officer.
5. Contract completion time has been extended by 49 calendar days (9 September thru 27 October 2000).

6. This adjustment constitutes compensation in full on behalf of the contractor and its subcontractors and suppliers, for all costs and markups directly and indirectly attributable to the changes ordered herein, for all delays related thereto and for performance of the changes within the time frame of the contract.

7. If the foregoing is acceptable, it is requested that you sign in Block 15B, complete Block 15C of this form, and return the original and 3 copies to this office.

**EXHIBIT D**

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE

PAGE OF PAGES 1 | 1

2. AMENDMENT/MODIFICATION NO. Change "AE"

3. EFFECTIVE DATE

4. REQUISITION/PURCHASE REQ. NO.

5. PROJECT NO. (If applicable)

6. ISSUED BY CODE DACW59

US ARMY CORPS OF ENGINEERS
WM S MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH PA 15222-4186

7. ADMINISTERED BY (If other than Item 6) CODE DACW59

US ENGINEER DISTRICT, PITTSBURGH
727 W S MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH PA 15222-4186

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

P.E.C. CONTRACTING ENGINEERS
P.O. BOX 7872
PITTSBURGH, PA 15215

CODE | FACILITY CODE

(✓) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACTS/ORDER NO. DACW59-99-C-0002

10B. DATED (SEE ITEM 13) 25 MARCH 1999

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(✓) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: CONTRACT CLAUSE 52.243-4 "CHANGES"

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 3 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

It has been determined necessary to modify the above numbered contract for the New Dock Front, PEWARS, to definitize the initial order (MOD P0005) for the removal of unsuitable material in front of the existing cells and backfilling with graded stone.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
PAUL E. CHAMBERS PRES
PEC CONTRACTING ENGINEERS

15B. CONTRACTOR/OFFEROR
[signature] Pres
(Signature of person authorized to sign)

15C. DATE SIGNED 6/14/01

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
Michael S. DeStefano, Contracting Officer

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED 6/27/01

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105-02

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

USAPPC V2.00

CONTRACT NO: DACW59-99-C-0002
MODIFICATION NO: P0004
CHANGE ORDER: AE
CONTRACTOR: PEC Contracting Engineers

Therefore, the contract is hereby modified in the following particulars:

1. As a result of the definitization of the prior modification P0003 to remove and replace the unsuitable material in front of the dock wall and to extend the downstream portion of the new wall, one lump sum item will be deducted, four new lump sum items and four new unit price items will be added, and the quantities of seven unit price items will be increased as follows:

| ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| ----- | ------------ | ------- | ----- | ------ | ------- |
| P0000 | Dredge and Backfill | - 1 | Job | Sum | -$1,800,000.00 |
| P0401 | Bond | Not to Exceed | | | 6,146.73- |
| P0402 | Dredging | 16772 | CY | 28.65 | 480,517.80- |
| P0403 | #57 Stone Fill | 7115 | CY | 36.46 | 259,412.90- |
| P0404 | R-6 Stone | 4471 | CY | 47.82 | 213,803.22- |
| 0005 | Metal Sheet Piling | 1573 | LF | 39.00 | 61,347.00 |
| P0405 | Return Piles | 1 | EA | 8,612.57 | 8,612.57 |
| 0010 | Select Fill Material | 190 | CY | 33.00 | 6,270.00 |
| 0006 | Miscellaneous Metal | 6697 | LB | 1.68 | 11,250.96 |
| 0016 | Handrailing | 80 | LF | 40.00 | 3,200.00 |
| 0012 | Concrete | 44 | CY | 287.00 | 12,628.00 |
| 0011 | CLSM | 100 | CY | 76.00 | 7,600.00 |
| 0004 | Reinforcing Steel | 1660 | LB | .60 | 996.00 |
| P0406 | Excavation | 1 | Job | Sum | 2,000.00 |
| P0407 | Remove/Replace Fence | 1 | Job | Sum | 500.00 |
| P0408 | Disposal Site | 1 | Job | Sum | 86,120.59- |
| | | | | | ---------- |
| | | | Total | -$ | 639,594.23 |

5. The total contract price is decreased in the amount of $639,594.23.

6. The time for completion is extended 261 calendar days from 28 November 2000 thru 15 August 2001.

7. This adjustment constitutes compensation in full on behalf of the Contractor and its subcontractors and suppliers, for all costs and markups directly and indirectly attributable to the changes ordered herein, for all delays related thereto and for performance of the changes within the time frame stated.